**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**DWIGHT HOWARD**                                                     **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 5:14cv66-DCB-MTP**

**RUTH SAUCIER &**                                       **DEFENDANTS**
**DR. JAMES BURKE**

**REPORT AND RECOMMENDATIONS**

THIS MATTER is before the Court on the Motion for Summary Judgment [43] and Motions to Strike [59] and [61] filed by the Defendants Ruth Saucier and James Burke. Having carefully considered the motions, the submissions of the parties, and the applicable law, the undersigned recommends that the Motions to Strike [59] and [61] be denied, the Motion for Summary Judgment [43] be granted, and that this matter be dismissed with prejudice.

**BACKGROUND**

Plaintiff is an inmate in the custody of the Mississippi Department of Corrections ("MDOC"), presently incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi. He amended and clarified his claims at the *Spears*[1] hearing held in this case on February 9, 2015.

Plaintiff's claims arise from medical treatment he received while incarcerated at Wilkinson County Correctional Facility ("WCCF"). Plaintiff alleges that on two occasions, Defendant Dr. Burke prescribed him medication to treat his spine and back problems. Specifically, Plaintiff claims

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Flores v. Livingston*, 405 Fed. App'x 931, 0932 (5th Cir. 2010) (stating that allegations made at a Spears hearing supercede claims alleged in the complaint).

1

that he was prescribed the corticosteroids Prednisone and Medrol.[2] Plaintiff claims that Dr. Burke did not advise him of all the possible side effects of these medications. Plaintiff alleges that he suffered adverse side effects to his mental health, including mood swings and aggressive behavior. Plaintiff claims that he hit a nurse after starting the medications, and has been in several fights with other inmates due to his changed behavior. Plaintiff also alleges that he complained of these problems to Defendant Ruth Saucier, the head nurse at WCCF. Plaintiff alleges that Saucier instructed him to continue taking the medication.

The undersigned submitted report and recommendations to the district judge on February 11, 2015. *See* Report and Recommendations [31]. In the report and recommendations, the undersigned recommended dismissal of this matter for failure to state a claim. *Id.* Per Order [34], the report and recommendation was adopted in part, and the case was remanded to the undersigned magistrate judge. The district judge directed the undersigned to determine whether Plaintiff had stated an additional claim. Specifically, the undersigned was to determine whether the alleged denial of information regarding a particular medication constituted a claim under the Fourteenth Amendment for violation of the Plaintiff's right to refuse medical treatment.[3] *See* Order [34]. The remainder of

---

[2]Although they have different names, these medications are both corticosteriods. Corticosteriods are similar to a natural hormone produced by human adrenal glands, and are commonly used to relieve inflammation. *See* MedlinePlus, Methylpresnisolone, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682795.html (Last visited January 12, 2016).

[3]As set forth more fully below, other circuits have observed this right to entitle inmates to "such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting." *White v. Napolean*, 867 F.2d 103, 113 (3rd Cir. 1990); *see also Pabon v. White*, 459 F.3d 241, 249 (2d Cir. 2006); *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002).

the Plaintiff's claims were dismissed. *Id.*

Following the briefing of the issue by the parties, the undersigned found that liberally construing the allegations contained in the Plaintiff's complaint and his sworn testimony at the *Spears*[4] hearing, and for the reasons set forth in the district judge's order [34], the Plaintiff had sufficiently stated a claim. *See* Order [42].

On August 3, 2015, the Defendants filed their Motion for Summary Judgment [43] and Memorandum in Support [44], in which they argue that even if the Plaintiff had stated a claim, he has failed to establish a violation of his constitutional rights.

### STANDARD

A motion for summary judgement will be granted when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not

---

[4]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The parties to this case appeared and participated in a *Spears* hearing on February 9, 2015. *See* Docket Entry dated 02/09/2015.

"assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## ANALYSIS

*Motion for Summary Judgment*

As an initial matter, the undersigned notes that the right or claim asserted by the Plaintiff has not been acknowledged or defined by the United States Court of Appeals for the Fifth Circuit. While the Fifth Circuit has recognized that "a competent person has a liberty interest in refusing unwanted medical treatment," the court has not extended such a right to include an inmate's entitlement to particular information regarding such treatment. *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012). Moreover, the Fifth Circuit has not clearly delineated the bounds of an inmates's right to refuse medical treatment in any event. *See id.* at 595 (recognizing the right to refuse unwanted treatment, but also noting that "the law governing Fourteenth Amendment claims involving unwanted medical treatment in the prison context is far from certain.").

To the extent this right has been recognized in other circuits, however, the undersigned finds that the Plaintiff has nonetheless failed to make the requisite showing. "To establish a violation of the constitutional right to medical information, a prisoner must [1] satisfy an objective reasonableness standard, [2] must demonstrate that the defendant acted with the requisite state of mind, and [3] must make a showing that the lack of information impaired his right to refuse

4

treatment." *Pabon v. Wright*, 459 F.3d 241, 250 (2d Cir. 2006);[5] *see also Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) ("It is untenable, however, to assume that an inmate's unquestioning acceptance or failure to refuse the administration of . . . medication–without information about the drugs–automatically forecloses a finding of involuntariness."); *White v. Napoleon*, 97 F.3d 103, 113 (3d Cir. 1990) ("Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting.").

As set forth below, the Plaintiff has failed to offer any evidence showing the Defendants' actions were objectively unreasonable, that the Defendants acted with the requisite state of mind, or that the lack of information affected his right to refuse treatment.

### *Objective Reasonableness*

In *Pabon*, the Second Circuit held that a "prisoner is entitled only to such information as a reasonable patient would deem necessary to make an informed decision." 459 F.3d at 250. Moreover, "[A] doctor should not be required to provide each prisoner-patient with an exhaustive list of all the possible adverse effects of each aspect of his treatment. Instead, a doctor must simply provide a prisoner with such information as a reasonable patient would find necessary to making an informed decision regarding treatment options." *Id.*

In support of their Motion for Summary Judgment [42], the Defendants offer a portion of the Plaintiff's medical records from WCCF. According to the records, the Plaintiff had no known

---

[5] The Plaintiff does not articulate what standard should govern his claim. The standard utilized by the Second Circuit in *Pabon* is that which is most clearly defined. It is also the standard cited by the Defendants in their motion and memorandum brief. Accordingly, the undersigned will use the *Pabon* framework to analyze the Plaintiff's allegations.

allergies or adverse reactions when he received health care at WCCF.[6] These records also reflect that Dr. Charmaine McCleave prescribed Prednisone, the same corticosteroid at issue in this action, to the Plaintiff for back pain on July 24, 2013.[7] Plaintiff does not allege, and the record does not reflect, that he had any adverse reaction to Prednisone on this occasion.

While the Plaintiff alleges that Defendant Dr. James Burke prescribed him corticosteroids on two occasions, the medical records show that Dr. Burke only prescribed Prednisone to the Plaintiff on June 24, 2014.[8] Nine days later on July 3, 2014, Plaintiff submitted a sick call and was examined by licensed nurse practitioner Andrew Lee. The Plaintiff did not report any adverse reactions to the medication prescribed by Dr. Burke at that time.[9] Finally, the Plaintiff was prescribed a corticosteroid again on March 7, 2015, by Dr. Kenneth Williams. The Plaintiff does not allege that he suffered any adverse reaction on this occasion, and the record is devoid of any indication of the same.

The Plaintiff submitted the informational insert that accompanied his Prednisone prescription along with his complaint. Within the three pages of single-spaced fine print, the insert states that "psychiatric derangements may appear when corticosteroids are used."[10] The Plaintiff argues that this information should have been verbalized to him by both Dr. Burke and Nurse Saucier. Even assuming the Plaintiff actually suffered the adverse effects he alleges, the Defendants' omissions

---

[6]*See* Medical Records [43-1] at 5.

[7]*Id.* at 26.

[8]*Id.* at 36.

[9]*Id.* at 38.

[10]*See* Complaint [1] at 7-10.

are reasonable in light of the fact that the Plaintiff had been prescribed the same medication before with seemingly no adverse results. In other words, a rare and unlikely side effect of a commonly prescribed[11] medication– indeed, a medication the Plaintiff had taken in the recent past without complication or complaint–is not the kind of information a "reasonable patient would find necessary to making an informed decision." *Pabon*, 459 F.3d at 250.

### *Requisite State of Mind*

The Plaintiff has also failed to submit any evidence indicating that Defendant Burke or Saucier acted with the requisite state of mind. In *Pabon*, the court held:

> Inadvertent failure to impart medical information cannot form the basis of a constitutional violation . . . in order to incur liability[,] a prison official's failure to adequately inform a patient regarding that patient's proposed medical treatment must be done with, at a minium, deliberate indifference to the prisoner's right to refuse treatment . . . simple negligence will not suffice.

459 F.3d at 250-51. An individual acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety . . . the [individual] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In this case, the Plaintiff alleges that Dr. Burke and Nurse Saucier acted with intent to cause him harm, but he has offered no evidence to support this allegation. Likewise, there is no evidence establishing that the Defendants denied the Plaintiff adequate information in an attempt to force him to accept treatment. As outlined above, the same corticosteroid had been prescribed to the Plaintiff

---

[11]*See* Most common uses of Corticosteroids, Dr. Harold Gladwell, SteadyHealth, available at http://www.steadyhealth.com/articles/most-common-uses-of-corticosteroids (Last visited January 13, 2016) ("Corticosteroids are a very popular and effect type of medication . . . .").

once before at WCCF without issue. Furthermore, in a sworn affidavit offered in support of the motion for summary judgement, Dr. Burke states that he was unaware the Plaintiff had any allergies or a propensity for an adverse reaction to any medication.[12] Dr. Burke's assertion is supported by the Plaintiff's medical records, which indicate that he had no known allergies or adverse reactions.[13] *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that medical records may rebut an inmate's allegations of deliberate indifference).

Accordingly, based on the evidence before the Court, there is no indication that Dr. Burke or Nurse Saucier knew of and disregarded an excessive risk to the Plaintiff's health or safety. Under the record before the Court, the alleged failure to inform the Plaintiff of Prednisone's possible side effects is, at most, negligence, which is insufficient to establish a constitutional violation. *See Pabon*, 459 F.3d at 250-51 (noting that "inadvertent failures to impart medical information" do not establish a constitutional violation based on a failure to warn); *see also Hutchinson v. Razdan*, 2013 WL 811882, at *7 (S.D. Fla. Jan. 29, 2013) (holding that a physician's mistaken assumption that an inmate had already been fully informed of the risks of and alternatives to a proposed treatment constituted mere negligence).

### *Lack of Information Impaired the Right to Refuse Treatment*

The *Pabon* court emphasized that "the right to medical information is not, in and of itself, an independent right . . . . [A]s a threshold matter, a prisoner must show that, had he received information that was not given to him, he would have exercised his right to refuse the proposed

---

[12] *See* Burke Affidavit [43-1] at 3.

[13] *See* Medical Records [43-1] at 5.

8

treatment." 459 F.3d at 251.

Though the Plaintiff asserts he would have declined to take the medication at issue if he had known the possible side effects, the record reflects that the Plaintiff took the same medication both before and after the occasion at issue without complaint and without adverse effect.[14] These records indicate that the Plaintiff's knowledge regarding the adverse effects of corticosteroids did not affect his right to refuse the treatment. It is unnecessary to resolve this issue, however, as the Plaintiff has failed to satisfy the first two prongs of the *Pabon* framework, as set forth above.

Having been confronted with a motion for summary judgment, Plaintiff can no longer rest on the allegations set forth in his pleadings. *Isquith*, 847 F.2d at 199. Although the Plaintiff filed several responses to the Defendants' motion for summary judgment, he has offered no evidence contradicting his medical records. At this stage of the proceedings, he cannot rely on mere allegations.

For these reasons, the undersigned finds that the Plaintiff has failed to establish a genuine issue of material fact as to his allegations, and recommends that Defendants' Motion for Summary Judgment [43] be granted.

## *Motions to Strike*

The Plaintiff has submitted a substantial number of responses to the Defendants' motion for

---

[14] As outlined above, Plaintiff was prescribed a corticosteroid at WCCF on several occasions. The incident at issue occurred on June 24, 2014, when Dr. Burke prescribed Prednisone to the Plaintiff. *See id.* at 36. However, Plaintiff was prescribed the same type of medication on July 24, 2013 and March 7, 2015. *Id.* at 26; 38. In his sworn affidavit, Dr. Burke states that there was no indication that the Plaintiff would suffer any adverse affect to the medication when Dr. Burke prescribed it. *See* Burke Affidavit [43-1] at 1-4.

summary judgment.[15] In Motions [59] and [61], Defendants request that the Plaintiff's Responses [58] and [60][16] be struck from the record as unauthorized pleadings. Both pleadings seek to offer additional evidence in support of the Plaintiff's claims.

While the undersigned recognizes that the Plaintiff filed the additional pleadings without leave of court, striking the pleadings from the record is unnecessary and does not change the result. Accordingly, the undersigned recommends that Defendants' Motions [59] and [61] be denied.

## RECOMMENDATIONS

For the reasons outlined above, the undersigned recommends that the Motion for Summary Judgment [43] be GRANTED, that Motions to Strike [59] and [61] be DENIED, and this matter be dismissed with prejudice.

## RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain

---

[15]*See* Affidavit [55], Evidence to Support Claim [56], Response [58], Discovery [60]

[16]Although this pleading is entitled "Discovery," and the Plaintiff states that it is not a response, *see* Affidavit [49], the pleading clearly offers arguments and exhibits to counter the Defendants' motion for summary judgment.

error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 20th day of January, 2016.

s/ Michael T. Parker
United States Magistrate Judge
